UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:23-cr-00501-SRC-1 |
| | ) | |
| BOBBY LEE JONES | ) | |
| | ) | |
| Defendant. | ) | |

**<u>Memorandum and Order</u>**

**I.     Background**

The United States indicted Bobby Lee Jones on multiple counts.  Docs. 1–2.  The Court

severed Count I, doc. 178, and held a jury trial on that count, docs. 235, 238, 239, 243.  The

parties have since entered into a guilty-plea agreement addressing all other counts while

reserving appellate rights as to Count I.  See doc. 280.

Count I alleged that Jones knowingly and intentionally distributed fentanyl to P.B.,

causing P.B.'s death.  Doc 1 at 1, doc. 2 at 1 (The Court cites to page numbers as assigned by

CM/ECF.).  The jury found Jones guilty.  Doc. 247.  In two motions, Jones asks for a new trial

on five grounds:  (1) the Court erred in denying Jones's *Batson* challenge, (2) the Court

erroneously admitted "highly prejudicial photographs of the victim's dead body," (3) the Court

erred by admitting a highly prejudicial photograph of Jones, (4) there was enough cumulative

error from the combined effect of the above three grounds to deprive Jones of a fair trial, doc.

253 at 1–3, and (5) juror misconduct deprived Jones of his right to a fair trial, impartial jury, and

due process of law, doc. 262 at 1.  Jones also asks for an evidentiary hearing on ground five.  *See*

doc. 262-1.  Having fully considered the entire record, the Court denies Jones's motions.

II.    **Standard**

Rule 33(a) of the Federal Rules of Criminal Procedure provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."  Rule 33(b) similarly "allows district courts to vacate a conviction and grant a new trial on the basis of newly discovered evidence."  *United States v. Meeks*, 742 F.3d 838, 840 (8th Cir. 2014); *see* Fed. R. Civ. P. 33(b).  The decision to grant or deny a Rule 33 motion "is within the sound discretion of the [district] court."  *United States v. Campos*, 306 F.3d 577, 579 (8th Cir. 2002).   The Court "can weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict."  *Id.* (citation and internal quotation marks omitted).  But the court must allow the jury's verdict to stand unless the court determines a miscarriage of justice will occur.  *Id.*; *see also United States v. Fetters*, 698 F.3d 653, 656 (8th Cir. 2012) ("Motions for new trials are generally disfavored and will be granted only where a serious miscarriage of justice may have occurred." (internal citation omitted)); *United States v. Worman*, 622 F.3d 969, 978 (8th Cir. 2010) ("A district court will upset a jury's finding only if it ultimately determines that a miscarriage of justice will occur.").

For allegations of trial error, the court should "balance the alleged errors against the record as a whole and evaluate the fairness of the trial" to determine whether a new trial is appropriate.  *United States v. McBride*, 862 F.2d 1316, 1319 (8th Cir. 1988).  The granting of a new trial under Rule 33 "is a remedy to be used only 'sparingly and with caution.'"  *United States v. Dodd*, 391 F.3d 930, 934 (8th Cir. 2004) (quoting *Campos*, 306 F.3d at 579).  And to obtain a new trial because of newly discovered evidence, a defendant must show that:  "(1) the evidence was unknown or unavailable at the time of trial; (2) [the defendant] was duly diligent in attempting to uncover the evidence; (3) the newly discovered evidence is material; and (4) the newly discovered evidence is such [that] its emergence probably will result in an acquittal upon

2

retrial." *Meeks*, 742 F.3d at 840 (first citing Fed. R. Crim. P. 33(b); then citing *United States v. Rubashkin*, 655 F.3d 849, 857 (8th Cir. 2011)).

### III.    Discussion

#### A.    Jones's *Batson* challenge

During jury selection, the United States moved to peremptorily strike venireperson number three, a Black female.  Jones objected that—because venireperson number three is the same race as Jones—the United States impermissibly sought to strike the venire person based on race.  Jones challenged the strike under *Batson v. Kentucky*, 476 U.S. 79 (1991).  The United States responded that its race-neutral justification for striking venireperson number three was that she is young, single, newly employed as a nurse, and still lived with her parents.  The United States also struck venireperson number 16—a white male—for the same reasons.  Although Jones maintained that the United States's asserted reasons are pretextual, the Court found that, because the United States was striking a white male juror for the same reasons, its reasons for striking venireperson number three were not pretextual.

In his first new-trial motion, Jones reasserts his *Batson* challenge, arguing that "the strike was racially motivated."  Doc. 253 at 1.  Jones claims that "[t]he strike established a prima facie case of racial discrimination, as the [United States] used its peremptory challenge to remove a minority juror without any race-neutral justification supported by the record."  *Id.*  Jones claims that the United States's "stated reason was pretextual, insufficient, or unsupported by voir dire responses."  *Id.*  Therefore, the alleged "*Batson* violation undermines the integrity of the entire jury, a new trial must be granted," Jones asserts.  *Id.*

When evaluating a *Batson* challenge, the "[C]ourt must determine whether the defendant has made a prima facie showing that the prosecutor exercised a peremptory challenge on the

3

basis of race." *United States v. Roubideaux*, 112 F.4th 606, 610 (8th Cir. 2024) (quoting *Rice v. Collins*, 546 U.S. 333, 338 (2006)). "Second, if the showing is made, the burden shifts to the prosecutor to present a race-neutral explanation for striking the juror in question." *Id.* And "[a]lthough the prosecutor must present a comprehensible reason, the second step of this process does not demand an explanation that is persuasive, or even plausible; so long as the reason is not inherently discriminatory, it suffices." *Id.* "Third, the court must then determine whether the defendant has carried his burden of proving purposeful discrimination." *Id.* This step "involves evaluating the persuasiveness of the justification proffered by the prosecutor, but the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." *Id.* at 610–11.

As before, Jones has not met his burden of proving purposeful discrimination. That the United States struck venireperson number 16—a white male—for the same reasons as venireperson number three suffices to show a "comprehensible reason" for the strike that is "not inherently discriminatory." *Id.*; *see also United States v. Darden*, 70 F.3d 1507, 1531–32 (8th Cir. 1995) (finding that a district court did not abuse its discretion when allowing a strike on the basis of inexperience); *United States v. Hart*, 544 F.3d 911, 915 (8th Cir. 2008) (finding that a district court did not abuse its discretion when upholding a strike when a prosecutor struck other similarly situated venirepersons). The Court therefore finds that the "prosecution's explanation for striking the prospective juror was honest and race-neutral." *Roubideaux*, 112 F.4th at 611; *see also Darden*, 70 F.3d at 1531 (noting the a "[d]istrict [c]ourt [i]s in the best position to judge the motives of the prosecutor"). Accordingly, the Court denies Jones's Motion for New Trial on this ground. Doc. 253 at 1.

**B.      Pictures of the victim's deceased body**

Jones next argues that the Court erred when it admitted, over his objection, exhibits 3A–3H, pictures of the victim P.B., into evidence.  Doc. 253 at 2.  Exhibits 3A to 3E are pictures of P.B. at her residence, the site of her death, while Exhibits 3F to 3H were pictures taken of P.B. at the medical examiner's office.  Exhibits 3G and 3H display P.B. nude from the back.  Jones reasserts his objection under Federal Rule of Evidence 403, claiming that the "probative value was substantially outweighed by the danger of unfair prejudice."  Doc. 253 at 2.  Jones argues that "[t]hese photographs depicted disturbing and inflammatory images that had minimal probative value."  *Id.*  Jones claims that "[t]he cause, manner, and location of the victim's death were not in dispute, rendering the photographs cumulative and unnecessary."  *Id.*  Jones also claims that "[t]he photographs risked inflaming the passions of the jury" and "encouraging a verdict based on sympathy rather than facts."  *Id.*

Federal Rule of Evidence 403 provides that the Court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice."  Fed. R. Evid. 403.  And the Eighth Circuit reviews preserved evidentiary issues for abuse of discretion.  *See United States v. Garrett*, 103 F.4th 490, 496 (8th Cir. 2024).

The Court first rejects Jones's claim that the cause of death was not in dispute.  During his cross-examination of Dr. Sarah Reilly, Jones's counsel extracted testimony that acetaminophen and marijuana—which were present in P.B.'s system at the time of her death—could be deadly in higher doses.  And in his closing argument, Jones's counsel brought up Dr. Reilly's testimony to argue that two of the drugs in P.B.'s system could be fatal.  Jones, therefore, disputed the cause of P.B.'s death.

Nevertheless, the Court properly admitted these photographs.  The Court heard preadmission testimony, outside the presence of the jury, from Officer Templet and the medical examiner, Dr. Tatiana Bihun.  Officer Templet testified that Exhibits 3A to 3E fairly and accurately depicted the deceased victim P.B. when he arrived at the scene of her death.  Dr. Bihun testified that Exhibit 3F depicts P.B. as her body was received into the medical examiner's office, whereas Exhibits 3G and 3H depict P.B.'s body before the medical examiner's office made any incisions at autopsy.  Dr. Bihun testified that the pictures fairly and accurately depict P.B.'s body at the medical examiner's office.  She stated that taking such pictures is part of the medical examiner's standard procedures.  Exhibits 3G and 3H also show the lividity of P.B.'s body, which is pooling of blood that happens after an individual's death.

Dr. Bihun also testified that her office examined Exhibits 3A to 3E, because it is standard to examine the body at the scene of death.  These exhibits show signs consistent with P.B.'s death, Dr. Bihun said.  And when coming to a final determination regarding the cause and manner of death, Dr. Bihun testified that she looks at everything, including photographs at the scene and at the autopsy.  The photographs helped her determine that no external injuries to P.B.'s body existed, and also showed her the body's lividity patterns.  The Court then overruled Jones's objections and admitted these pictures.

As before, the Court rejects Jones's arguments that any prejudice from these exhibits substantially outweighed their probative value under Rule 403.  The Court recognizes that the exhibits depict P.B.'s deceased body, including in a state of undress.  But the exhibits situate P.B. at the scene of her death, as Officer Templet and the death investigator saw her.  The exhibits depict the state of P.B.'s body before the autopsy.  And Dr. Bihun relied on these

exhibits in reaching her conclusions regarding P.B.'s death.  The exhibits also aided Dr. Bihun in describing to the jury her analysis of P.B.'s death.

Accordingly, the Court denies Jones's Motion for New Trial on this ground.  Doc. 253 at 2; *see United States v. Ingle*, 157 F.3d 1147, 1153 (8th Cir. 1998) (finding that the district court did not abuse its discretion when admitting autopsy pictures that aided the medical examiner's testimony); *United States v. Davidson*, 122 F.3d 531, 538 (8th Cir. 1997) (finding the same for autopsy pictures that helped explain the testimony of the doctor performing the autopsy).

### C.    Photograph of Jones

Jones next claims that the Court erred by admitting a "photograph of Defendant in which he appears to be displaying a gang-related hand sign while being in possession of a large sum of money."  Doc. 253 at 2.  Jones argues that "[a]dmission of the photograph violated Rules 401, 402, and 403 because its sole practical effect was to portray Defendant as a bad person with a propensity for criminal behavior."  *Id.*  He claims that the image "invited the jury to convict based on improper character inferences, including gang association, criminal lifestyle, and uncharged conduct."  *Id.*  Jones further argues that the United States's "closing argument exacerbated the prejudice, inviting the jury to consider Defendant's alleged drug dealing—an accusation never charged, never proven, and never supported by evidence."  *Id.*

Federal Rule of Evidence 401 states that evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action."  Fed. R. Evid. 401.  Federal Rule of Evidence 402 provides that relevant evidence is admissible.  *See* Fed. R. Evid. 402.  And Federal Rule of Evidence 403 provides that the Court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice."  Fed. R. Evid. 403.  The Eighth

Circuit reviews preserved evidentiary issues for abuse of discretion. *See Garrett*, 103 F.4th at 496.

In its opening statement, the United States detailed that on January 15, 2023, P.B. texted a phone number ending in 4094 to inquire about purchasing marijuana and Percocet pills.  The United States asserted that P.B. then met the phone's operator and purchased the drugs.  After taking the pills—later discovered to contain fentanyl—P.B. died, the United States argued.  The United States' Exhibit 5B reveals the text messages to this effect between P.B. and the operator of the 4094 number.  A key factual dispute at trial, therefore, was whether Jones operated the 4094 phone number at the time in question, and therefore transacted with P.B. and gave her fentanyl.  In his opening statement and closing argument, Jones disputed that he possessed the phone.

Exhibit 6B contains multiple images, all of which feature Jones; the first image, to which Jones reasserts an objection, is a screenshot of a video showing Jones in sagging pants, holding a bottle of what appears to be alcohol, and making a hand sign with stacks of cash in his pants pocket.  When moving to admit Exhibit 6B, the United States pointed out that all of the images in Exhibit 6B were extracted from the phone with the number ending in 4094.  The United States argued that the images on this phone were taken around the date of the drug transaction in question and are therefore probative as to who possessed the 4094 phone during the drug transaction.

Jones objected to admitting Exhibit 6B, arguing that the photos on the phone do not establish who owned the phone.  The Court overruled Jones's objection, recognizing that ownership and use or possession at the time in question are two different issues; the Court also acknowledged that photographs on a phone do not conclusively establish use or possession

(which are the relevant inquiries here, as opposed to ownership) of the phone, but ruled that the images are nevertheless probative as to who used or possessed the phone on the day of the drug transaction.

Detective Nicole Weite then testified that the video on the phone (from which the relevant image is a screenshot) was taken on January 13, 2023, two days before the possessor of that phone set up a drug transaction with P.B. Based on this, the Court found, and again finds, that the first image of Exhibit 6B was probative of whether Jones used or possessed the 4094 phone on the day of the drug transaction, a fact "of consequence in determining the action." Fed. R. Evid. 401. And while the image is not conclusive of Jones's use or possession of the phone in question, it nonetheless crosses the threshold of relevance. *See United States v. Two Hearts*, 32 F.4th 659, 665 (8th Cir. 2022) (providing that a picture's requiring an inferential step to have probative value does not undermine a district court's finding of relevance); *see also Steak N Shake Inc. v. White*, No. 4:18-cv-00072-SRC, 2020 WL 85172, at *10 (E.D. Mo. Jan. 7, 2020) ("Evidence need not be 'conclusive' to be probative." (citation omitted)).

And any alleged prejudice to Jones did not substantially outweigh this probative value. True, the video screenshot depicts Jones in sagging pants with cash in his pocket, holding a bottle of what appears to be alcohol, and making a hand sign. But the exhibit also contains a time stamp showing that the video was created just two days before the alleged drug transaction between P.B. and the owner of the phone took place. As discussed, Jones argued at trial that he was not in possession of the phone on the day of the drug transaction—and therefore did not sell fentanyl to P.B. That most of the images in Exhibit 6B, including the video of Jones, were created within a few days of the drug transaction calls Jones's claims into question. The screenshot was therefore probative as to whether Jones sold fentanyl to P.B. on the day in

9

question.  *See United States v. Hester*, 140 F.3d 753, 759–60 (8th Cir. 1998) (finding no abuse of discretion and no unfair prejudice when a district court admitted photographs contradicting a defendant's claim at trial).

Finally, Jones's argument that the United States's "closing argument exacerbated the prejudice, inviting the jury to consider Defendant's alleged drug dealing—an accusation never charged, never proven, and never supported by evidence" lacks merit.  Doc. 253 at 2.  First, the indictment, doc. 1 at 1; doc. 2 at 1, charged Jones with distributing fentanyl, of which the jury found him guilty, doc. 247.

And Jones's argument regarding the United States's closing argument, doc. 253 at 2, is irrelevant to whether the Court properly admitted the first image of Exhibit 6B when it did, *see Nebraska Plastics, Inc. v. Holland Colors Americas, Inc.*, 408 F.3d 410, 415–16 (8th Cir. 2005) ("[The Eighth Circuit] evaluate[s] the district court's understanding of the evidence at the time the district court made the ruling.").  Even so, Jones's argument fails.  During his testimony, Jones stated that he was unemployed.  In its closing argument, the United States brought up, among other things, Jones's unemployment and the stack of money in the first image of Exhibit 6B to bolster the inference that Jones dealt drugs, a fact "of consequence in determining the action."  Fed. R. Evid. 401.  Jones did not object when the United States made this statement.  *See Billingsley v. City of Omaha*, 277 F.3d 990, 997 (8th Cir. 2002) ("A failure to object to statements made during closing argument waives such an objection." (citation omitted)).  And when discussing the relevant image, the United States did not discuss Jones wearing sagging pants, holding alcohol, or making a hand sign.  The Court therefore rejects the argument that the United States exacerbated any unfair prejudice—if any existed—in its closing argument.  Accordingly, the Court denies Jones's Motion for New Trial on this ground.  Doc. 253 at 2.

**D.      Cumulative error from the combined effect of the above three**

Finally, Jones argues that "[e]ven if the Court finds any individual error insufficient to warrant a new trial standing alone, the combined effect of [the above three alleged errors] created a trial atmosphere that violated Defendant's right to due process and an impartial jury." Doc. 253 at 2–3. Jones claims that the "cumulative impact of these errors deprived Defendant of a fair trial." *Id.* at 3.

The Eighth Circuit "reverse[s] on the basis of cumulative error only where the case as a whole presents an image of unfairness resulting in the deprivation of the defendant's constitutional rights, even though none of the claimed errors is itself sufficient to require reversal." *United States v. Anderson*, 783 F.3d 727, 751 (8th Cir. 2015). And if the Court "reject[s] all of [the] claimed errors, [the] cumulative-error argument fails." *Id.* "[S]ubstantial prejudice to the defendant" must exist for "revers[al] based upon the cumulative effect of errors." *United States v. Gladfelter*, 168 F.3d 1078, 1083 (8th Cir. 1999). And this doctrine does not apply "when the evidentiary rulings are within the trial court's discretion." *Id.* For these reasons, the Court denies Jones's motion on this ground. Doc. 253 at 3–4.

**E.      Alleged juror misconduct**

In his Second Motion for New Trial, Jones seeks a new trial or an evidentiary hearing because of juror misconduct. Doc. 262 at 1; doc. 262-1 at 1. Jones claims that the day after trial, a juror disclosed, to an individual named Beneva Nunley, that "she was familiar with the [d]efendant prior to serving on the jury." Doc. 262 at 1; doc. 262-1 at 1. Yet, "[d]uring voir dire, . . . all jurors affirmatively denied any such knowledge or familiarity." The parties agree that Jones's allegations are against juror number eight, who was venireperson number 15. Doc. 285 at 6; doc. 291 at 4.

Jones discloses two similar-looking affidavits by Beneva Nunley and her daughter Michelle, noting that juror number eight sent Facebook Messenger messages to Beneva Nunley saying that juror eight served as a juror in the trial against Jones. Doc. 262-2 at 1; doc. 262-3 at 1; doc. 291-1; doc. 291-2. Michelle Nunley claims to have two children with Jones and frequently makes negative posts on social media about him. Doc. 262-2 at 1; doc. 262-3 at 1. The affidavits claim that "upon information and belief," juror number eight "has seen many of these negative posts regarding [Jones]." Doc. 262-2 at 1; doc. 262-3 at 1; doc. 291-1 at 1; doc. 291-2 at 1. Jones submits various screenshots of some of these social media posts. Docs. 291-3, 291-4, 291-5, 291-6, 291-7, 291-8, 291-9.

Jones asserts that under *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 556 (1984), "a new trial is required when (1) a juror fails to answer a material question honestly during voir dire, and (2) a truthful response would have provided a basis for a valid challenge for cause." Doc. 262 at 1. Because "[t]he jurors' nondisclosure meets both prongs of the *McDonough* test," Jones asserts that the juror's "failure to disclose her familiarity constituted juror misconduct and deprived [Jones] of the right to an impartial jury." Doc. 262 at 1. Jones seeks an evidentiary hearing to determine "[t]he nature and extent of the juror's familiarity with [Jones], . . . [w]hether the non-disclosure was intentional, [and] [w]hether the relationship created actual or implied bias." Doc. 262-1 at 1.

The United States first asserts that "failing 'to object at the time the jury is empaneled operates as a conclusive waiver if the basis of the objection is known or might have been known or discovered through the exercise of reasonable diligence.'" Doc. 285 at 7 (quoting *United States v. Johnson*, 688 F.3d 494, 501 (8th Cir. 2012)). The United States claims that because Michelle Nunley "was present in the courtroom during the entire trial proceeding," "[i]f there

12

was any bias Juror #8 had against the Defendant based on Michelle Nunley's social media posts, this could have easily been discovered through 'the exercise of reasonable diligence'" either during jury selection or the duration of trial.  Doc. 285 at 7.  Jones claims that he was not familiar with juror number eight and did not have a basis for objection until juror number eight initiated contact with Beneva Nunley.  Doc. 291 at 5.  While the record does not establish whether Michelle Nunley was present in the courtroom during trial, or whether Jones could have discovered juror number eight's relationship with Michelle Nunley, the Court denies Jones's motion because he fails to substantiate his allegations of juror misconduct.

"District courts also have 'broad discretion' regarding whether to conduct evidentiary hearings regarding juror misconduct allegations."  *United States v. Needham*, 852 F.3d 830, 839 (8th Cir. 2017) (quoting *United States v. Muhammad*, 819 F.3d 1056, 1061 (8th Cir. 2016)).  "A district court is not obligated to conduct an evidentiary hearing each time there is a possibility of juror bias."  *United States v. White Bull*, 646 F.3d 1082, 1095 (8th Cir. 2011) (citation omitted).  In considering whether an evidentiary hearing is necessary, a district court should consider the "the content of the allegations, the seriousness of the alleged misconduct or bias, and the credibility of the source."  *Id.* (citation omitted).

"[S]peculative and unsubstantiated allegations simply [do] not require an evidentiary hearing."  *Muhammad*, 819 F.3d at 1063.  Rather, "[t]o obtain a new trial or evidentiary hearing on the basis of a juror's mistaken response on voir dire, a party must establish that (1) the juror answered dishonestly, not just inaccurately; (2) the juror was motivated by partiality; and (3) the true facts, if known, would have supported striking [the juror] for cause."  *Needham*, 852 F.3d at 839 (quoting *United States v. Tucker*, 137 F.3d 1016, 1026 (8th Cir. 1998)) (cleaned up); *see*

13

*also McDonough Power Equipment*, 464 U.S. at 556 (noting that "only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial.").

"In contrast, a juror's mere failure to answer correctly whether the juror recognizes a party or attorney is insufficient to establish that the juror answered dishonestly." *Needham*, 852 F.3d at 839. And "[b]ecause courts presume that a prospective juror is impartial, establishing juror partiality is a high hurdle." *Id.* "Absent a juror's profession of the inability to be impartial, juror bias may be implied only in certain egregious situations." *Id.* at 840 (cleaned up). And "[s]uch extreme situations are limited to those in which the relationship between a prospective juror and some aspect of the litigation makes it highly unlikely that the average person could remain impartial." *Id.* (cleaned up). These situations include "a revelation that a juror is an actual employee of the prosecuting agency, that the juror is a close relative of one of the participants in the trial or the criminal transaction, or that the juror was a witness or somehow involved in the criminal transaction." *Id.*

Here, Jones has not met his burden to show that juror number eight "answered dishonestly, not just inaccurately" and was "motivated by partiality." *Id.* at 839. During voir dire, the Court asked all venirepersons whether they knew Jones or his counsel. No venirepersons raised their hands. And "juror [number eight's] mere failure to answer correctly whether the juror recognizes a party or attorney is insufficient to establish that the juror answered dishonestly." *Id.* The Court also gave the venire multiple opportunities to provide any reason at all why they could not be fair and impartial or serve as a juror on the case; juror eight did not provide any such reasons. And the United States asked juror number eight during jury selection if she can promise to decide this case based on the evidence that she sees and hears in this

14

courtroom.  Juror eight answered yes.  In the "[a]bsen[ce] [of] a juror's profession of the inability to be impartial, juror bias may be implied only in certain egregious situations."  *Id.*

While the affidavits Jones submits allege that juror eight and Michelle Nunley are cousins, and that Michelle Nunley has two children with Jones, doc. 262-2 at 1, such a relationship is too attenuated to qualify as an "egregious situation," *see Manuel v. MDOW Ins. Co.*, 791 F.3d 838, 844 (8th Cir. 2015) (finding that a juror and a witness being cousins is not a close enough relationship to establish juror partiality).

And any other evidence of partiality is purely speculative.  Michelle Nunley's affidavit states that "[u]pon information and belief," juror eight was "very familiar" with Jones, and she "believe[s]" that the juror "has seen many of [her] negative [social media] posts regarding [Jones]."  Doc. 262-2 at 1–2; *see also* doc. 262-3 at 1–2.  Importantly, Jones never files the alleged Facebook Messenger messages that he claims juror eight sent Beneva Nunley.  *See* doc 262-2 at 1; doc. 262-3 at 1; *see also* docs. 291, 291-1, 291-2, 291-3, 291-4, 291-5, 291-6, 291-7, 291-8, 291-9.  And "speculative and unsubstantiated allegations simply [do] not require an evidentiary hearing."  *Muhammad*, 819 F.3d at 1063.  Jones fails to meet his burden, and the Court denies Jones's motion for a new trial or an evidentiary hearing.  Docs. 262, 262-1.

## IV.    Conclusion

Accordingly, the Court denies Jones's [253] [262] [262-1] motions for a new trial and evidentiary hearing.

So ordered this 20th day of May 2026.

_____
STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE

15